EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Randiel Cordero Meléndez<br><br>Peticionario | Certiorari<br><br>2015 TSPR 123<br><br>193 DPR ____ |

Número del Caso:     CC-2014-337


Fecha: 15 de septiembre de 2015



Abogada de la Parte Peticionaria:

> Lcda. Marangely González Correa
> Sociedad para Asistencia Legal



Oficina de la Procuradora General:

> Lcda. Tanaira Padilla Rodríguez
> Subprocuradora General
>
> Lcda. Lisa M. Durán Ortiz
> Procuradora General Auxiliar



Materia: Sentencia con Opiniones de Conformidad y Opinión Disidente


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                          CC-2014-337      Certiorari

Randiel Cordero Meléndez

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 15 de septiembre de 2015.

Atendida la *Petición de Certiorari*, se expide el auto, se confirma la denegatoria de la *Moción Solicitando Desestimación* y se ordena que se enmiende el pliego acusatorio para que la cita de la disposición legal imputada sea el Art. 2 de la Ley Núm. 15-2011, 4 LPRA sec. 1632.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Kolthoff Caraballo emitió Opinión de Conformidad a la cual se unieron los Jueces Asociados señores Martínez Torres y Feliberti Cintrón.

El Juez Asociado señor Rivera García hace constar la siguiente expresión:

> "Estoy conforme con el resultado expuesto en esta Sentencia en lo que respecta únicamente a la improcedencia de la desestimación de la acusación solicitada por el peticionario Sr. Randiel Cordero Meléndez."

La Jueza Asociada Oronoz Rodríguez emitió Opinión de Conformidad. El Juez Asociado señor Estrella Martínez emitió Opinión Disidente. La Jueza Asociada señora Pabón Charneco no interviene.


                              María I. Colón Falcón
                    Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                          CC-2014-337     Certiorari

Randiel Cordero Meléndez

    Peticionario

Opinión de Conformidad emitida por el Juez Asociado señor Kolthoff Caraballo a la cual se unieron los Jueces Asociados señores Martínez Torres y Feliberti Cintrón

San Juan, Puerto Rico, a 15 de septiembre de 2015.

El caso de autos nos invitaba a que este Tribunal precisara dos asuntos medulares. Primeramente, aclarar nuestros pasados pronunciamientos en <u>Pueblo v. Hernández Villanueva</u>, 179 DPR 872 (2010), en cuanto al principio de especialidad. En segundo lugar, determinar la naturaleza y aplicación del Art. 2 de la Ley Núm. 15-2011, 4 LPRA sec. 1632.

I.

Los hechos del caso relevantes a la controversia son los siguientes.

La noche del 24 de abril de 2013, personal del Departamento de Corrección y Rehabilitación

alegadamente le incautó un teléfono celular al Sr. Randiel Cordero Meléndez (Peticionario o Cordero Meléndez) en las inmediaciones de una institución penal sin que este estuviera autorizado para poseerlo. Los oficiales correccionales se percataron de un comportamiento que les pareció sospechoso por parte del confinado Cordero Meléndez, y al proceder a registrar su celda, descubrieron una bolsa plástica en el área del sanitario con un teléfono celular en su interior. Por lo anterior, el Ministerio Público imputó al Peticionario haber infringido el Art. 277 del Código Penal de 2012, 33 LPRA sec. 5370.

El 13 de septiembre de 2013 se celebró la Vista Preliminar, en la cual el Tribunal de Primera Instancia determinó no causa probable para acusar por el delito imputado. Inconforme con tal determinación, ese mismo día el Ministerio Público solicitó la Vista Preliminar en Alzada. Posteriormente, el 16 de septiembre de 2013 el Estado presentó por escrito su solicitud formal de Vista Preliminar en Alzada, y el foro de instancia procedió a citarla para el 24 de septiembre de 2013.

En la celebración de la Vista Preliminar en Alzada, el Ministerio Público sentó a testificar a varios de los oficiales que estuvieron involucrados en la alegada incautación del teléfono celular la noche del 24 de abril de 2013. Estos en esencia testificaron sobre como intervinieron con el acusado la noche del incidente y el trámite administrativo de seguimiento que se realizó. En

particular, el oficial investigador de querellas administrativas explicó el proceso en el cual los confinados son orientados a raíz de la Ley Núm. 15-2011, "sobre que no pueden tener ningún tipo de celular dentro de la institución".[1]

Por su parte, la trabajadora social del Departamento de Corrección y Rehabilitación testificó haber realizado la entrevista de entrada al señor Cordero Meléndez en la cual fue orientado específicamente sobre las consecuencias de violar la prohibición sobre posesión de teléfonos celulares según la Ley Núm. 15-2011, supra.[2] El certificado de orientación del acusado con fecha del 26 de noviembre de 2012, en el cual se evidenciaba que se le instruyó sobre la Ley Núm. 15-2011, supra, fue estipulado por la Defensa y el Ministerio Público como evidencia durante la vista.[3]

Así las cosas, la Defensa alegó la violación al principio de especialidad. Esto pues, el señor Cordero Meléndez estaba siendo procesado por el Art. 277 del Código Penal, supra, a pesar de la existencia de la Ley Núm. 15-2011, ley especial que regula la conducta imputada. En su oportunidad, el Ministerio Fiscal explicó que no había presentado el caso bajo la ley especial pues no contaba con evidencia que sustentara la capacidad del artefacto de hacer comunicación.

---

[1] Véase Apéndice de la Petición de Certiorari, pág. 85.

[2] Íd, pág. 86.

[3] Íd, pág. 10.

En la referida vista, el Tribunal de Primera Instancia determinó causa por el delito imputado, el Art. 277 del Código Penal, supra. Por lo anterior, el 26 de septiembre de 2013, se presentó una acusación contra el Peticionario en la cual se imputó que:

> […] ilegal, voluntaria, maliciosa, criminalmente, siendo confinado de una institución penal del Estado Libre Asociado de Puerto Rico, tenía en su posesión equipo de telecomunicación no autorizado por el Departamento de Corrección, que permite el acceso a la red celular de telecomunicaciones, consistente en un teléfono celular color negro, de la compañía ATT, con chip y batería.[4]

Luego de las solicitudes del descubrimiento de prueba, el 10 de octubre de 2013, la representación legal del señor Cordero Meléndez presentó una *Moción Solicitando Desestimación (Enmendada)* al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRA Ap. II, R.64(p).[5] En la misma, alegó nuevamente que se había incumplido con el principio de especialidad al acusar por el delito general incluido en el Código Penal de 2012 y no por la ley especial, Art. 2 de la Ley 15-2011, *supra*. Además, expresó que el Ministerio Público estaba obligado a acusar por la ley especial. No obstante, añadió que tampoco procedía la misma pues había ausencia total de prueba sobre los elementos esenciales del delito especial aplicable a los hechos.

---

[4] Véase Apéndice de la Petición de Certiorari, pág. 11.

[5] Previamente el 9 de octubre de 2013 se había presentado una primera *Moción Solicitando Desestimación*, la cual fue enmendada.

El Tribunal de Primera Instancia celebró una vista para atender la *Moción Solicitando Desestimación* y posteriormente la declaró no ha lugar. Inconforme, el Peticionario acudió ante el Tribunal de Apelaciones y solicitó la revocación de la determinación del foro de instancia. Luego de evaluar el asunto, el tribunal apelativo se negó a expedir el recurso, por entender que era frívolo.

El 29 de abril de 2014, el Peticionario recurrió ante esta Curia por medio de un recurso de *Certiorari y una Moción Solicitando Paralización de los Procedimientos en Auxilio de Jurisdicción* en los cuales solicitó la revocación de los tribunales a quo. El 2 de mayo de 2014 emitimos una Resolución declarando Ha Lugar la moción en auxilio de jurisdicción y concedimos 20 días a la parte recurrida para que mostrara causa por la cual no debíamos revocar al Tribunal de Apelaciones. El 27 de mayo de 2014 la parte recurrida presentó su posición, por lo que procedemos a resolver con el beneficio de la misma.

**II.**

**Concurso de disposiciones penales y el principio de especialidad**

Recientemente, la Asamblea Legislativa, en su ejercicio de promulgar y modificar nuestro estado de derecho, aprobó la Ley Núm. 246-2014, mediante la cual se enmienda sustancialmente nuestro Código Penal. El Art. 9 del Código Penal, 33 LPRA 5009, sobre el principio de

especialidad se enmendó para que lea de la siguiente manera:

Artículo 9.- Concurso de disposiciones penales. Cuando la misma materia se regula por diversas disposiciones penales:

(a) La disposición especial prevalece sobre la general.

(b) La disposición de mayor alcance de protección al bien jurídico absorberá la de menor amplitud, y se aplicará la primera.

(c) La subsidiaria aplicará sólo en defecto de la principal, si se declara expresamente dicha subsidiaridad, o ésta se infiere.

Sin embargo, luego de la enmienda el artículo quedó configurado como se encontraba antes de aprobado el Código Penal del 2012. En lo pertinente a nuestra controversia, el principio de especialidad quedó inalterado, incluso luego de aprobado el Código Penal de 2012, por lo que no se ve afectada la interpretación que le hemos dado en el pasado. Esto pues, la porción relacionada dicta que, *cuando la misma materia se regula por diversas disposiciones penales, la disposición especial prevalece sobre la general*. En Pueblo v. Hernández Villanueva, 179 DPR 872 (2010), este Tribunal discutió a fondo el principio de especialidad. A pesar de ello, algunas de las expresiones que hiciéramos en aquel entonces se han prestado a confusión, por lo que resulta conveniente que nos expresemos nuevamente en torno a la figura y aclaremos el asunto.

Como bien dijéramos, el principio de especialidad establece que "cuando un mismo hecho se regula por diversas disposiciones penales: (a) La disposición especial prevalece sobre la general".[6] Este principio es el encargado de determinar cuál es la disposición penal que debe regir la situación cuando hay más de un precepto penal de aplicación a una misma conducta delictiva.[7] Para que el principio de especialidad aplique es requerido que concurran ante un mismo hecho varias disposiciones penales que guardan una relación de género a especie.[8] Por nuestra parte, en Pueblo v. Hernández Villanueva, supra, expresamos que el concurso de leyes ocurre "cuando a una misma acción le son aplicables dos o más disposiciones penales que se excluyen entre sí".[9]

No obstante, es menester aclarar que cuando en Pueblo v. Hernández Villanueva, supra, hicimos referencia a que ambos estatutos deben ser mutuamente excluyentes, -o que debe existir un conflicto entre estos- no nos referíamos al contenido de los delitos en sí, sino a que ambas disposiciones no pueden ser aplicadas simultáneamente. Ambos delitos tienen que

---

[6] Pueblo v. Hernández Villanueva, 179 DPR 872, 891 (2010).

[7] Ibíd., págs. 891-892. Véase además, L. Jiménez de Asúa, Tratado de Derecho Penal, 2da ed., Buenos Aires, Ed. Losada, 1958, T. II, pág. 540.

[8] D. Nevares-Muñiz, Derecho Penal Puertorriqueño, 6ta ed. Rev., San Juan, Instituto para el Desarrollo del Derecho, Inc. 2010, pág. 128.

[9] Pueblo v. Hernández Villanueva, supra, pág. 893, citando a su vez a A. Arroyo de las Heras, Manual de derecho penal: el delito, Pamplona, Ed. Aranzadi, 1985, pág. 812.

regular la misma conducta. Es esencialmente esta la razón para que resulten mutuamente excluyentes, ya que por mandato constitucional no se puede castigar por ambas disposiciones al mismo tiempo, pues ambas regulan la misma conducta.[10] Es decir, en el concurso aparente de leyes, "el hecho está igualmente comprendido en varias disposiciones legales, pero éstas, lejos de ser susceptibles de aplicación conjunta, son *incompatibles* entre sí".[11] (Énfasis en el original).

En este contexto, las expresiones de la Honorable Jueza Asociada señora Rodríguez Rodríguez en su Opinión Disidente en Pueblo v. Hernández Villanueva, supra, no eran contradictorias a nuestras expresiones, toda vez que establecían que "el llamado concurso aparente de leyes supone un conflicto entre dos disposiciones que *aparentan ser* igualmente aplicables a un mismo hecho *precisamente porque inicialmente ninguna excluye a la otra*".

---

[10] Art. II, Sec. 11, Const. E.L.A., LPRA, Tomo 1; Blockburger v. United States, 284 U.S. 299 (1932). En cuanto al principio de especialidad, el mismo opera cuando "uno o varios hechos son incluibles en varios preceptos penales de los que solo uno puede aplicarse, puesto que su estimación conjunta supondría un *bis in ídem [doble exposición]*". Santiago Mir Puig, Derecho Penal - Parte general, Barcelona, Ed. Reppertor, 2008, págs. 675-678. En lo pertinente, este Tribunal se expresó sobre este principio en el contexto del delito especial de desacato por perjurio y del delito de perjurio según tipificado en el Código Penal, véanse Pueblo v. Pérez Casillas, 177 DPR 380, 390 n.6 (1986); S.P. Amadeo, El poder de los tribunales en Puerto Rico para castigar por desacato, Madrid, Ed. Rev. Der. Privado, 1961, pág. 100, n. 15, discutiendo Pueblo v. Valcourt, 18 DPR 484 (1928).

[11] Pueblo v. Hernández Villanueva, supra, pág. 893, citando a su vez a A. Arroyo de las Heras, Manual de derecho penal: el delito, Pamplona, Ed. Aranzadi, 1985, pág. 812. Véase además, Opinión Disidente de la Juez Asociada señora Rodríguez Rodríguez en Pueblo v. Hernández Villanueva, supra, pág. 912.

Ciertamente ninguna excluye a la otra por su contenido, sino que no pueden ser aplicadas simultáneamente.

Por otra parte, hemos expresado que esta situación representa un concurso *aparente*, porque el propio ordenamiento jurídico ofrece los criterios para determinar la aplicabilidad de una u otra disposición penal en cada caso concreto. Para que este conflicto –el tener que decidir qué delito es de aplicación– sea uno real, el ordenamiento jurídico tendría que guardar silencio en cuanto a cómo se resolvería, pero afortunadamente no es así.[12]

Conforme lo anterior, el principio de especialidad descarta la discreción del Estado, pues hace mandatoria la aplicación del estatuto especial sobre el general. Es decir, en realidad el Estado no se encuentra en posición de tomar la decisión, sino que el propio ordenamiento jurídico establece el curso de acción a seguir. En cuanto a la determinación de la relación de especialidad, la profesora Dora Nevares expresa lo siguiente,

> **La relación de especialidad puede darse de varias maneras.** Primero, cuando se trata de una disposición especial y una disposición de carácter general dentro de la misma ley. El ejemplo de esta situación es el caso de los tipos simples y agravados de un delito. Si consideramos el tipo simple como la disposición de carácter general y el tipo agravado como la disposición de

---

[12] <u>Pueblo v. Hernández Villanueva</u>, supra, pág. 892. Véase además, L. Jiménez de Asúa, *La Ley y el Delito*, 13ra ed., Buenos Aires, Ed. Sudamericana, 1984, págs. 141-142.

carácter especial, encontramos que el primero está en una relación de género a especie con el segundo. El tipo agravado contiene todos los elementos de la disposición general, o sea del tipo simple, pero además incluye uno o más elementos que lo particularizaran. (…)

**La relación de especialidad puede también darse al comparar una ley especial con una ley general como lo es el Código Penal**, *e.g., Pueblo v. Mena*, 113 DPR 275 (1982) (Ley de Instituciones Hipotecarias y Código Penal), *Pueblo v. Ramos Rivas*, 171 DPR 826 (2007) (reincidencia bajo Ley de Sustancias Controladas y Código Penal); o entre dos leyes especiales, una de las cuales está en relación a la otra de especie a género. *Pueblo v. López Pérez*, 106 DPR 584 (1977) (Ley de Caza y Ley de Armas); *Pueblo v. Hernández Villanueva*, 2010 TSPR 203 (opiniones divididas; ver op. J. Rodríguez).[13] (Énfasis nuestro).

Como podemos observar, la relación de especialidad no se limita únicamente al supuesto en el cual se trate de una disposición especial y una disposición de carácter general dentro de la misma ley, sino que también aplica **al comparar una ley especial con una ley general como lo es el Código Penal**. Por otra parte, aclaramos que lo importante es determinar si con la ley en cuestión, la Asamblea Legislativa pretende dar un trato especial a la conducta específicamente legislada, distinto al tratamiento dado a la conducta general. En otras palabras, una ley no se considera del tipo especial frente al Código Penal meramente por haber sido aprobada fuera del mismo.

---

[13] D. Nevares-Muñiz, <u>Código Penal de Puerto Rico Comentado</u>, 2da ed., Instituto para el Desarrollo del Derecho, 2013, págs. 20-21.

Para determinar la especialidad, hay que estudiar la conducta prohibida y regulada por ambos estatutos. Para ello, se debe ir primeramente a los elementos constituidos de la conducta que ambos prohíben. Esto es, un precepto es más especial que otro cuando requiere, además de los presupuestos igualmente exigidos por este segundo, algún otro presupuesto adicional. Un ejemplo comúnmente utilizado es que si un precepto requiere los presupuestos a + b y otro los presupuestos a + b + c, el segundo es más especial que el primero.[14] Por la naturaleza de esta relación de especialidad, la misma puede darse entre dos o más estatutos independientemente de si ambos pertenecen al Código Penal, o no.

Sin embargo, limitar el principio de especialidad al aspecto de los delitos menores incluidos en otros, trastocaría el verdadero sentido del principio de especialidad que es establecer cuál estatuto debe aplicar ante la situación en la cual uno regula un conjunto de conductas generales, mientras que el otro es uno diseñado y aprobado especialmente para la situación imputada. Así, existe la extraña posibilidad —como en el caso de autos— en la cual, por designio legislativo, los elementos requeridos para la comisión del delito aparentan ser básicamente los mismos. En dicha situación, la relación de especialidad ha de establecerse según las

---

[14] S. Mir Puig, Derecho Penal: Parte General, 8va ed., Barcelona, Reppertor, S.L., 2008, pág. 654.

características y el propósito de ambos estatutos. Como veremos a continuación, la Asamblea Legislativa quiso darle un trato especial a la conducta prohibida de poseer un teléfono celular en una institución penal sin estar autorizado, frente al delito general de poseer un objeto prohibido que pudiera afectar el orden o la seguridad de una institución penal sin estar autorizado.

**III.**

*Aplicación del Art. 2 Ley Núm.15-2011, ante el texto del Art. 277 del Código Penal de 2012, supra.*

El Art. 277 del Código Penal lee como sigue:

> Toda persona que introduzca, venda o ayude a vender, o tenga en su poder con intención de introducir o vender drogas narcóticas, estupefacientes o cualquier sustancia controlada o armas de cualquier clase, bebidas alcohólicas o embriagantes, explosivos, proyectiles, <u>teléfonos celulares</u>, u otros medios de comunicación portátil o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, a un confinado, a sabiendas de que es un confinado, será sancionada con pena de reclusión por un término fijo de tres (3) años.
>
> Toda <u>persona confinada en una institución penal o juvenil</u> que, <u>sin estar autorizado, posea teléfonos celulares</u> u otros medios de comunicación portátil, o cualquier

otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, será sancionado con pena de reclusión por un término fijo de tres (3) años. 33 LPRA sec. 5370 (2012). (Énfasis nuestro).

Como se puede observar, este estatuto prohíbe de manera general la posesión e introducción de objetos que pudieran afectar el orden o la seguridad de una institución penal. Entre las conductas que prohíbe se encuentra que una persona confinada en una institución penal o juvenil posea, sin estar autorizado, un teléfono celular. Según el propio estatuto, tal violación será sancionada con pena de reclusión por un término fijo de tres (3) años.

Por otra parte, al hacer el mismo análisis a la disposición contenida en la ley especial, Art. 2 de la Ley Núm. 15-2011, supra, descubrimos que este artículo fue aprobado específicamente para penalizar el poseer equipos de telecomunicación no autorizados en una institución penal. Ello, provoca que cuando el equipo incautado sea uno de telecomunicaciones, se activa el principio de especialidad y obliga al Estado a aplicar este estatuto y no así el general contenido en el Art. 277 del Código Penal, supra. Veamos.

El Art. 2 de la Ley Núm. 15-2011 dispone lo siguiente:

> La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, *incluyendo teléfonos celulares* y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. (…) (Énfasis nuestro).

De esta forma, igual que en el Art. 277 del Código Penal, *supra*, el Art. 2 de la Ley Núm. 15-2011, *supra*, prohíbe la posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados. Entre la especie de equipos de telecomunicación no autorizados, el artículo a modo de ejemplo especifica *teléfonos celulares*. Además de los teléfonos celulares, el legislador quiso prohibir cualquier artefacto que haga las mismas funciones que un teléfono celular, por lo que se incluyó la frase, "cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución".

Es decir, si la persona se encontrara en posesión de un artefacto -que no sea un teléfono celular- y se pretende acusar bajo este estatuto, el Estado no solo tendrá que probar la posesión del artefacto, sino también la capacidad del mismo de ejercer las funciones típicas del teléfono celular. Como sabemos, esta parte no es de

aplicación al caso de autos, toda vez que el equipo incautado al acusado fue un **teléfono celular**, que por definición es *un equipo de telecomunicación*. Ello pues, este fue expresamente prohibido en la porción explicativa del estatuto, y enfatizado por el legislador con la frase "*incluyendo **teléfonos celulares**"*.

Lo anterior cobra mayor sentido lógico cuando nos percatamos que la ley especial en su parte introductoria, establece que el propósito para su aprobación es "establecer como política pública (…) facultar al Departamento de Corrección y Rehabilitación y las Administraciones adscritas al mismo a diseñar e implantar estrategias *para la detección, rastreo y desactivación de equipos celulares* o de telecomunicaciones no autorizados dentro de sus instituciones".[15] Incluso, la Asamblea Legislativa en su exposición de motivos explica que "*debe considerarse como delito o falta **de por sí la <u>posesión</u> de equipos de telecomunicación no autorizados** en la institución penal o juvenil*, así como el acto de proveer dichos equipos a la población".[16] (Énfasis suplido).

De igual forma, la Ley Núm. 15-2011, 4 LPRA sec. 1631 *et seq.*, establece claramente entre sus propósitos penalizar **la posesión** y el uso no autorizado de equipos de telecomunicaciones, *incluyendo el teléfono celular*, en

---

[15] Ley Núm. 15-2011, 4 LPRA sec. 1632.

[16] Exposición de Motivos de la Ley Núm. 15-2011, supra.

las instituciones penales y juveniles de Puerto Rico. Así, distinto a la teoría del Peticionario, concebimos que la frase referente a la capacidad de comunicación, modifica únicamente los términos "equipo o aditamento" y la misma es independiente al término "teléfono celular". Esto pues, entre ambos términos hay una conjunción copulativa que sirve como división gramatical para separar los mismos. El estatuto específicamente cita "*incluyendo teléfonos celulares* y **cualquier tipo de equipo o aditamento que permita transmisión**". Por ello, es que la frase que aduce a la capacidad de transmitir es requerida únicamente a cualquier tipo de equipo o aditamento, no así a teléfonos celulares. Nuevamente, un teléfono celular es por definición un equipo de telecomunicación.[17]

Entonces, resulta imperativo deducir que cuando el legislador utilizó el término "equipo de telecomunicaciones" se refería a equipos como lo son teléfonos celulares. El legislador utilizó una frase explicativa, a los efectos de señalar que no se limitara únicamente a teléfonos celulares, sino además, a cualquier otro equipo o aditamento que pudiera igualar

---

[17] Conforme a la definición del Diccionario de la Real Academia Española, un equipo de *telecomunicaciones* es aquel perteneciente a un "sistema de comunicación telegráfica, telefónica o radiotelegráfica y demás análogos". (http://lema.rae.es/drae/?val=telecomunicaci%C3%B3n (última visita, 14 de noviembre de 2014)).Por otra parte, dicho diccionario define *telefónica* como "[p]erteneciente o relativo al teléfono o a la telefonía". (http://lema.rae.es/drae/?val=telef%C3%B3nica (última visita, 14 de noviembre de 2014).)

las propiedades comunicativas de los teléfonos. Es decir, "cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet".[18]

A raíz de lo anterior, bajo la teoría del Peticionario la posesión no autorizada de un teléfono celular en una institución penal o juvenil no constituye la conducta prohibida hasta tanto se compruebe la capacidad del teléfono. **Es decir, con tan solo extraer el "Sim Card" de los teléfonos celulares, la persona internada en una institución penal o juvenil no comete la conducta prohibida, pues el teléfono celular no sería capaz de acceder a la red de comunicaciones.** Esta teoría me parece errada y contraria a la intención legislativa.

Un examen más técnico sobre el lenguaje del Art. 2 de la Ley Núm. 15-2011, *supra*, ayuda a entender un poco mejor la naturaleza del estatuto y complementar nuestra interpretación. El texto expreso del artículo dicta lo siguiente:

> La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, <u>incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de</u>

---

[18] Art. 2 de la Ley Núm. 15-2011, *supra*.

> comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. […]

Al extraer la porción explicativa –parte subrayada– el artículo leería como sigue,

> La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. […]

Como podemos observar, la oración no pierde su sentido lógico y esto se debe a que esta porción entre comas (,) de la oración es utilizada a modo de ejemplo o explicación de lo que constituye un "equipo de telecomunicación". Así pues, la expresión *incluyendo teléfonos celulares*, es utilizada por el legislador a modo de explicación. De lo contrario, la situación antes señalada sobre el simple acto de extraer el "Sim Card" de un teléfono celular, burlaría el sentido de este estatuto, ya que al no tener capacidad de transmisión, la posesión del teléfono celular no constituiría la conducta prohibida. Esto a pesar de que la intención legislativa pretendía penalizar *la posesión* de *equipos de telecomunicaciones*.

**IV**

En síntesis, en las circunstancias de este caso no existe un conflicto real, pues el Ministerio Público no tiene discreción alguna en cuanto a qué estatuto ha de aplicar. Como mencionamos, una vez establecido que ambos estatutos regulan la misma conducta, el principio de especialidad obliga al Estado a aplicar la legislación que atiende especialmente la situación. Es decir, en el caso que nos ocupa, el Ministerio Público está obligado a aplicar la disposición contenida en el Art. 2 de la Ley Núm. 15-2011 y no el estatuto general del Código Penal.

Conforme toda la discusión vertida en esta Opinión, es evidente que el texto expreso de la acusación cumple cabalmente con el mandato constitucional de debido proceso de ley, al notificar adecuadamente sobre la conducta por la cual se le procesa al acusado. Así, el peticionario fue debidamente notificado de la conducta prohibida en el Art. 2 de la Ley Núm. 15-2011. Cabe señalar que es precisamente bajo esta conducta que se le halló causa en vista preliminar en alzada. Esto es, que de forma

> [...] ilegal, voluntaria, maliciosa, criminalmente, siendo confinado de una institución penal del Estado Libre Asociado de Puerto Rico, tenía en su posesión equipo de telecomunicación no autorizado por el Departamento de Corrección, que permite el acceso

a la red celular de telecomunicaciones, consistente en un teléfono celular color negro, de la compañía ATT, con chip y batería.[19]

En ocasiones pasadas hemos determinado que lo importante es que el contenido de la acusación establezca todos los elementos de la conducta que se imputa, independientemente que la calificación de la acusación no se atempere a su contenido. En lo relativo, hemos expresado específicamente que la calificación del delito "hecha por el Fiscal no es definitiva, ya que son los hechos alegados en la acusación, y no las etiquetas formales, los que deben servir de base para la verdadera identificación del delito imputado y de la disposición estatutaria envuelta".[20] Así, en aquellos casos en los cuales "existe un conflicto entre los hechos probados y la calificación del delito que es en sí una conclusión y, entre ambos, los hechos deben predominar".[21]

Cónsono con lo anterior, la Regla 35(d) de Procedimiento Criminal, establece que la acusación debe contener "la cita de la ley, reglamento o disposición que se alegue han sido infringidos, pero la omisión de tal cita o **una cita errónea se considerará como un defecto de**

---

[19] Véase, Apéndice de la *Petición de certiorari*, pág. 11.

[20] Pueblo v. Bermúdez, 75 DPR 760, 763-764 (1954). Véase además, Pueblo v. Seda, 82 DPR 719,727 (1961); Pueblo v. Conroig, 60 DPR 168 (1942); Pueblo v. Canals, 48 DPR 794 (1935).

[21] Pueblo v. Candelaria Couvertier, 100 DPR 159, 161 (1971).

**forma**".[22] En lo pertinente, la Regla 36 de Procedimiento Criminal instituye que "[u]na acusación o denuncia no será insuficiente, ni podrán ser afectados el juicio, la sentencia o cualquier otro procedimiento basados en dicha acusación o denuncia, por causa de algún defecto, imperfección u omisión de forma que no perjudicare los derechos sustanciales del acusado".[23]

Así, el texto de la acusación contra el señor Cordero Meléndez por la cual se le encontró causa probable en vista preliminar en alzada contenía todos y cada uno de los elementos esenciales de la conducta tipificada en el Art. 2 de la Ley 15-2011, supra. Por ello, el curso de acción apropiado es considerar una enmienda de forma según establecido en el inciso (A) de la Regla 38 de Procedimiento Criminal, 34 LPRA Ap. II, R. 38(a), para que la calificación de la acusación vaya acorde con el contenido de la misma. Esto es, que la acusación sea calificada como una bajo el Art. 2 de la Ley Núm. 15-2011, supra.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[22] Regla 35(d) de Procedimiento Criminal, 34 LPRA Ap. II, R.35 (d). (Énfasis nuestro).

[23] Regla 36 de Procedimiento Criminal, 34 LPRA Ap. II, R. 36.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

  Recurrido

          v.

Randiel Cordero Meléndez

  Peticionario

*Certiorari*

CC-2014-337

Opinión de conformidad emitida por la Jueza Asociada Oronoz Rodríguez

En San Juan, Puerto Rico, a 15 de septiembre de 2015.

Estoy conforme con la Sentencia que hoy emite este Tribunal por entender que procede acusar por el delito estatuido en el Art. 2 de la Ley Núm. 15-2011 (Ley Núm. 15), *infra*. Sin embargo, ante la situación excepcional que presenta el caso de autos considero necesario emitir ciertas expresiones con relación al principio de especialidad según codificado en el Art. 9 del Código Penal de 2012, *infra*, y el principio de favorabilidad. Art. 4 del Código Penal de 2012, *infra*.

I

El 24 de abril de 2013, el Sr. Randiel Cordero Meléndez se encontraba confinado en el Complejo Correccional Las Cucharas en Ponce cuando alegadamente un oficial de custodia encontró en su celda un teléfono celular. Como consecuencia, se presentó una denuncia contra el señor Cordero Meléndez por infringir el Art. 277 del Código Penal de 2012, 33 LPRA sec. 5370.[24] Posteriormente, se halló causa para arresto y se fijó una fianza de $25,000. Se celebró la vista preliminar y, debido a que el Tribunal no encontró causa para acusar, el Ministerio Público solicitó una vista preliminar en alzada. En ésta, se trajo a colación que el Ministerio Público presentó la denuncia por una infracción al Art. 277 del Código Penal, supra, y no por el Art. 2 de la Ley Núm. 15, 4 LPRA sec. 1632,[25] en supuesta violación al

---

[24] Para efectos de esta Opinión de conformidad haré referencia al Art. 277 del Código Penal, Ley Núm. 146-2012, 33 LPRA sec. 5370, a pesar de que al momento de presentarse la denuncia la numeración del artículo era 275. Véase Ley Núm. 10-2013; Ley Núm. 124-2013. Dicho artículo dispone, en lo pertinente:

Toda persona confinada en una institución penal o juvenil que, sin estar autorizado, posea teléfonos celulares u otros medios de comunicación portátil, o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, será sancionado con pena de reclusión por un término fijo de tres (3) años.

[25] En lo pertinente, el Art. 2 de la Ley Núm. 15-2011, 4 LPRA sec. 1632, dispone:

Toda persona ingresada en una institución penal o juvenil de cualquier nivel de seguridad sólo podrá hacer uso de aquellos medios de comunicación que sean autorizados para su uso por la administración de la institución. La autoridad responsable de la reglamentación de la institución fijará condiciones básicas de accesibilidad, tiempo, lugar, cantidad y frecuencia de estas comunicaciones, que estarán sujetas a sufrir restricciones

principio de especialidad. El Ministerio Público expresó que, según su interpretación, el Art. 2 de la Ley Núm. 15, supra, requiere como elemento del delito que se demuestre que el celular estaba conectado a la red celular de comunicaciones, mientras que para acusar por el Art. 277 del Código Penal, supra, basta con la mera posesión del celular.[26] Sustentado en lo anterior, el Ministerio Público radicó la denuncia por el Art. 277 del Código Penal, supra, ya que, según alegó, no tenía constancia de que el celular estuviese conectado a la red el día de los hechos. La representante legal del señor Cordero Meléndez indicó que conforme al principio de especialidad, el Ministerio Público no tenía discreción para acusar por la ley penal general.[27] Luego de la argumentación correspondiente, el Tribunal de Primera Instancia determinó causa para acusar y consecuentemente el señor Cordero Meléndez fue acusado por infracción al Art. 277 del Código Penal, supra.[28]

---

adicionales como parte de medidas disciplinarias o de seguridad.

La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. (....)

[26] Apéndice, págs. 87-88.

[27] Íd., págs. 88-89.

[28] La acusación presentada describía el delito de la siguiente manera:

El referido acusado, Randiel Cordero Meléndez, allá en o para el 24 de abril de 2013, y en Ponce, Puerto Rico, (…) ilegal, voluntaria, maliciosa, criminalmente, siendo confinado de una institución penal del Estado Libre Asociado de Puerto Rico, tenía en su posesión equipo de telecomunicación no autorizado por el Departamento de Corrección, que permite el acceso a la red celular de

Subsiguientemente, el señor Cordero Meléndez presentó una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64. Alegó que, por virtud del principio de especialidad, el delito aplicable era el Art. 2 de la Ley Núm. 15, supra, y no el Art. 277 del Código Penal, supra. Además, argumentó que en virtud de lo anterior procedía la desestimación porque hubo una ausencia total de prueba sobre los elementos del delito en la vista preliminar en alzada. El Ministerio Público se allanó a la determinación del Tribunal.

El Tribunal de Primera Instancia declaró no ha lugar la moción de desestimación presentada por el señor Cordero Meléndez. Determinó que la acusación se realizó conforme a derecho debido a que en la vista preliminar en alzada se demostró que éste tenía un teléfono celular en su celda sin autorización para poseerlo.

Insatisfecho, el señor Cordero Meléndez presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Argumentó que erró el foro inferior al determinar que le aplicaba el Art. 277 del Código Penal, supra, y no el Art. 2 de la Ley Núm. 15, supra. El Tribunal de Apelaciones denegó el auto de *certiorari* por entender que el recurso instado por el señor Cordero Meléndez era frívolo. Razonó que los delitos en controversia eran radicalmente

---

comunicaciones, consistente en un teléfono celular color negro, de la compañía ATT, con chip y batería. Apéndice, pág. 11.

distintos debido a que el delito imputado en el Código Penal penalizaba la mera posesión del celular en la institución correccional, mientras que el delito incluido en la ley especial penalizaba el uso de celulares para cometer fraudes u otros delitos desde la cárcel.

Inconforme, el señor Cordero Meléndez acudió ante este Tribunal mediante una petición de *Certiorari* y una *Moción solicitando paralización de los procedimientos en auxilio de jurisdicción*. Alegó que el Tribunal de Apelaciones erró al no expedir el recurso presentado, confirmando así la determinación del Tribunal de Primera Instancia de declarar no ha lugar la moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, supra. El 2 de mayo de 2014, emitimos una Resolución paralizando los procedimientos y le concedimos a la parte recurrida veinte días para que mostrara causa por la cual no se debía revocar la Resolución dictada por el foro apelativo intermedio.

El Ministerio Público compareció y argumentó que el principio de especialidad no aplica porque las dos disposiciones en controversia tipifican de manera idéntica la conducta antijurídica que penalizan, por lo cual no hay una relación de género a especie entre ambas.[29] Señaló que la frase "...que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por

---

[29] Escrito en cumplimiento de orden, pág. 8.

la institución..." incluida en el Art. 2 de la Ley Núm. 15, supra, no constituye un elemento adicional, sino que es una proposición subordinada adjetiva especificativa que busca describir lo que constituye un equipo o aditamento.[30] Asimismo, indicó que al caso de autos le aplica el principio de alternatividad por entender que las penas son distintas y que procede aplicar el delito que conlleve la pena más grave.[31]

En esencia, nos corresponde resolver si a la situación ante nuestra consideración le aplica el principio de especialidad y, como consecuencia, si procede la desestimación de la acusación. Veamos.

II

A

En el ámbito penal ocurre un concurso aparente de leyes si con relación a un hecho delictivo parecen concurrir varias disposiciones penales, pero en realidad sólo una ha sido infringida. L.E. Chiesa Aponte, Derecho Penal Sustantivo, 2da ed., Estados Unidos, Publicaciones JTS, 2013, pág. 81. Cuando se está ante este tipo de concurso, nuestro ordenamiento provee ciertas normas de interpretación para facilitar la resolución de los casos y determinar cuál disposición va a prevalecer en su

---

[30] Íd., pág. 9.

[31] Íd., pág. 10. El Ministerio Público sostiene que el Art. 277 del Código Penal, supra, tiene una pena más grave. Al momento de la comisión del delito y del comienzo del procedimiento criminal, la pena de ambos delitos era una de reclusión por un término fijo de 3 años. Sin embargo, estando el caso ante nuestra consideración, entró en vigor la Ley Núm. 246-2014 (Ley Núm. 246) y modificó la pena correspondiente al Art. 2 de la Ley Núm. 15, supra.

aplicación. L. E. Chiesa, <u>Derecho Penal Sustantivo</u>, 81 Rev. Jur. UPR 343, 352 (2012).

Una de estas normas es el principio de especialidad codificado en el Art. 9 del Código Penal de Puerto Rico de 2012, 33 LPRA sec. 5009. Éste dispone que "[c]uando la misma materia se regula por diversas disposiciones penales: (a) la disposición especial prevalece sobre la general". Íd.[32] Dicho principio aplica cuando ante un mismo hecho concurren dos disposiciones que tienen entre ellas una relación de género a especie.[33] D. Nevares-Muñiz, <u>Derecho Penal Puertorriqueño</u>, 7ma ed. rev., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 130. Según el Prof. Luis E. Chiesa, "una ley es especial solamente cuando es idéntica de todo punto a la ley general, con la única diferencia de que en la ley especial se añaden elementos adicionales que no están contemplados en la ley general". L. E. Chiesa, <u>supra</u>, pág. 353. Véanse, además, <u>Pueblo v. Calderón Álvarez</u>, 140 DPR 627, 644 (1996); <u>Pueblo v. López Pérez</u>, 106 DPR 584, 586 (1977).

---

[32] El Art. 9 del Código Penal, 33 LPRA sec. 5009, fue enmendado por la Ley Núm. 246 a los efectos de añadir expresamente dos principios que pueden ser de aplicación ante un concurso aparente de normas, los cuales son el principio de subsidiariedad y consunción.

[33] En <u>Pueblo v. Hernández Villanueva</u>, 179 DPR 872 (2010), este Tribunal resolvió que para que aplicara el principio de especialidad se tenía que estar ante dos o más disposiciones que regularan la misma materia y que fueran incompatibles de tal manera que se excluyeran entre sí. Íd., págs. 893-894. Contrario a lo que se resolvió, no es necesario que las disposiciones estén en conflicto y sean incompatibles para que apliquen las normas del principio de especialidad. "Para eso precisamente es que existe el concurso de leyes: para resolver casos en los que -a pesar de no haber un conflicto entre las disposiciones aparentemente aplicables- existen razones de peso para aplicar un precepto sobre otro". L. E. Chiesa, <u>supra</u>, pág. 349. Por eso, considero que procede revocar dichos pronunciamientos.

Asimismo, el tratadista Santiago Mir Puig explica que "[u]n precepto es más especial que otro cuando requiere, además de los presupuestos igualmente exigidos por este segundo, algún otro presupuesto adicional: si un precepto requiere los presupuestos a + b y otro los presupuestos a + b + c, el segundo es más especial que el primero". S. Mir Puig, Derecho Penal: Parte General, 8va ed., Barcelona, Reppertor, S.L., 2008, pág. 654. En esencia, "[t]odo aquel hecho que realiza el precepto especial realiza necesariamente el tenor literal del general, pero no todo hecho que infringe el precepto general realiza el tenor literal del especial". Íd. Véase Pueblo v. Ramos Rivas, 171 DPR 826, 837 (2007).

Lo anterior puede ocurrir entre una ley especial y una ley general, entre dos disposiciones de una misma ley o entre dos leyes especiales. D. Nevares-Muñiz, Código Penal de Puerto Rico, 3ra ed. rev., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 20. Véase Pueblo v. Ramos Rivas, supra, pág. 836; Pueblo v. López Pérez, supra, pág. 586. A modo de ejemplo, el delito de robo está en una relación de especialidad con el delito de apropiación ilegal, ya que el primero requiere que se realice una apropiación ilegal, pero le añade un elemento adicional, que haya mediado fuerza o violencia. Chiesa Aponte, Derecho Penal Sustantivo, op. cit., pág. 81.

Al aplicarse el principio de especialidad para resolver un concurso aparente, la disposición especial va a prevalecer sobre la general, excepto que por legislación se disponga lo contrario. Nevares-Muñiz, Derecho Penal Puertorriqueño, op. cit., pág. 131. Se aplica la ley especial porque se entiende que el propósito de promulgarla es desplazar o excluir la general, ya que "(...) quien realiza el tipo específico siempre consuma el genérico, mientras que a la inversa no sucede lo contrario". Pueblo v. Ramos Rivas, supra, pág. 837. Cabe mencionar que cuando se aplica una de las normas de interpretación a un concurso de leyes, como lo es el principio de especialidad, el juzgador carece de discreción para elegir la disposición que desea utilizar, sino que éste queda obligado a aplicar el precepto indicado según la regla aplicable al concurso aparente en controversia. L. E. Chiesa, supra, págs.350-352.

B

En 1974 se adoptó en nuestro Código Penal el principio de favorabilidad, cuyo origen es puramente estatutario. Pueblo v. González Ramos, 165 DPR 675, 684 (2005). Al amparo de éste procede la aplicación retroactiva de una ley penal cuando favorece a la persona imputada de delito. Pueblo v. Hernández García, 186 DPR 656, 673 (2012). Actualmente, el principio está codificado en el Art. 4 del

Código Penal, 33 LPRA sec. 5004, el cual dispone, en lo pertinente, que:

> La ley penal aplicable es la vigente al momento de la comisión de los hechos.
>
> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
>
> (a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
>
> (...)
>
> En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho.

Dicho principio tiene como propósito evitar la aplicación arbitraria e irracional de la ley penal. Chiesa Aponte, _Derecho Penal Sustantivo_, _op. cit._, pág. 59. Ello porque "el principio republicano de gobierno exige la racionalidad de la acción del estado y esta es afectada cuando, por la mera circunstancia de que un individuo haya cometido el mismo hecho con anterioridad a otro, se lo [sic] trate más rigurosamente". Chiesa Aponte, _Derecho Penal Sustantivo_, _op. cit._, pág. 59, citando a E. R. Zaffaroni, _Derecho Penal, Parte General_, 2da ed., Ediar, 2002, pág. 122.

En síntesis, el principio de favorabilidad incluido en el Art. 4 del Código Penal de 2012, _supra_, "aplicará a conducta delictiva realizada a partir del 1 de septiembre de 2012 cuando se apruebe una ley que sea más favorable que el Código Penal según vigente al momento de aprobación

de la ley posterior con respecto a la situación de la persona". Nevares-Muñiz, Derecho Penal Puertorriqueño, op. cit., pág. 102. Claro está, siempre que la ley posterior no tenga una cláusula de reserva que impida su aplicación retroactiva. Íd. La ley favorable podrá surgir mientras se está procesando al imputado, al momento de imponerle la sentencia o durante el término que está cumpliendo la misma. Art. 4 del Código Penal, supra. Asimismo, los cambios que se aplicarán retroactivamente pueden ser en cuanto a la tipificación del delito, sus atenuantes, las causas de exclusión de responsabilidad, los requisitos de prueba, así como disposiciones procesales. D. Nevares-Muñiz, Código Penal de Puerto Rico, op. cit., pág. 10.

Cabe mencionar que la Ley Núm. 246-2014, la cual recientemente enmendó el Código Penal de 2012, 33 LPRA sec. 5001 et seq., no contiene una cláusula de reserva que prohíba su aplicación retroactiva. Nevares-Muñiz, Derecho Penal Puertorriqueño, op. cit., pág. 102. Ello porque mediante dicha ley la legislatura tuvo la intención de "disponer penas rehabilitadoras en delitos menos graves y en delitos graves de severidad intermedia; además de disponer para el ejercicio de la discreción judicial mediante criterios que orienten al ejercerla". Íd.

C

Dado que lo que está ante nosotros es una moción de desestimación al amparo de la Regla 64(p) de Procedimiento

Criminal, supra, procede discutir brevemente las normas aplicables. La Regla 64 de Procedimiento Criminal, supra, establece los fundamentos que un acusado tiene a su disposición para solicitar la desestimación de la denuncia o acusación. E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Tercer Mundo Editores, 1993, Vol. III, pág. 217. En lo pertinente al caso ante nos, el inciso (p) de la Regla le permite al acusado solicitar la desestimación porque no se determinó causa probable conforme a derecho. Pueblo v. Negrón Nazario, 191 DPR 720, 734-735 (2014); Pueblo v. Rivera Vázquez, 177 DPR 868, 877-878 (2010). Si se trata de un delito menos grave, se impugna la determinación de causa probable para arresto mientras que, de tratarse de uno grave, se impugna la determinación de causa probable para acusar, ya sea en vista preliminar o vista preliminar en alzada. Pueblo v. Jiménez Cruz, 145 DPR 803, 813-816 (1998).

Hemos reconocido que, al amparo de la Regla 64(p) de Procedimiento Criminal, supra, el acusado puede impugnar la determinación de causa por dos fundamentos: (1) insuficiencia de la prueba, o (2) cuando se haya violado algún derecho procesal que se tenía que garantizar en la vista correspondiente. Pueblo v. Negrón Nazario, supra, pág. 735; Pueblo v. Rivera Vázquez, supra, pág. 878. En cuanto al fundamento relacionado a la prueba presentada,

sólo procede la desestimación cuando se determina que hay ausencia total de prueba, "ya sea porque no se presentó alguna evidencia sobre un elemento del delito imputado o porque no se presentó alguna evidencia sobre la conexión del acusado con el delito". Pueblo v. Negrón Nazario, supra, pág. 736. (Énfasis suprimido).

Por otro lado, la Regla 66 de Procedimiento Criminal, 34 LPRA Ap. II, R.66, establece que el tribunal debe denegar una moción de desestimación si ésta se basa en defectos de la acusación, denuncia o pliego de especificaciones que pueden subsanarse mediante enmienda. Véase Pueblo v. Rivera Vázquez, supra, pág. 880. A su vez, la Regla 67 de Procedimiento Criminal, 34 LPRA Ap. II, R.67, dispone que la desestimación al amparo de la Regla 64 de Procedimiento Criminal, supra, no impide que se comience un nuevo proceso penal, a menos que se trate de un defecto insubsanable o de la desestimación de un delito menos grave por no cumplir con los términos de juicio rápido. Ambas reglas se refieren a defectos en el pliego acusatorio o de particulares, los cuales pueden ser de forma o sustanciales. Pueblo v. Rivera Vázquez, supra, págs. 881-882.

El defecto de forma es uno subsanable que no afecta los derechos sustanciales del acusado y no hace insuficiente el pliego. 34 LPRA Ap. II, R. 36. Éste puede enmendarse en cualquier momento y, de no enmendarse, el

defecto queda subsanado al recaer el fallo o veredicto. 34 LPRA Ap. II, R. 38 (a). Un ejemplo de este tipo de defecto es que se omita o se cite erróneamente en la acusación la ley o disposición que alegadamente se infringió. 34 LPRA Ap. II, R. 35(d). En cambio, el defecto sustancial es uno que afecta algún derecho sustancial del acusado porque le impide preparar adecuadamente su defensa o porque hace insuficiente la acusación, denuncia o pliego. Chiesa Aponte, _Derecho Procesal Penal de Puerto Rico y Estados Unidos,_ _op. cit._, pág. 24. En ese caso, el tribunal podrá permitir en cualquier momento antes de la convicción o absolución del acusado las enmiendas necesarias. 34 LPRA Ap. II, R. 38 (b). De enmendarse y tratarse de una acusación, procede una nueva lectura de la misma. Íd. En cambio, si se trata de una denuncia, el acusado tiene derecho a que se celebre el juicio cinco días después de la enmienda. Íd.

D

Por último, al examinar los delitos en controversia surge que ambos penalizan la posesión no autorizada por parte de un confinado de un teléfono celular, sin que uno de los dos requiera algún elemento adicional. La frase "posesión de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión

inalámbrica a Internet", incluida en el Art. 2 de la Ley Núm. 15, supra, no implica que se tiene que demostrar que el celular estaba conectado, sino que lo menciona como un ejemplo de lo que constituye un equipo de telecomunicación en sí.

A modo de ejemplo, en el Art. 1 de la Ley Núm. 15 se expresa que "[e]n Puerto Rico ha proliferado la práctica de introducir equipos personales de telecomunicaciones, *incluyendo teléfonos celulares*, en las instituciones penales y juveniles y se ha detectado su uso frecuente para realizar o coordinar actividades ilícitas desde la institución".[34] 4 LPRA sec. 1631. El texto de la ley es claro y demuestra lo inescapable: que el teléfono celular es un equipo de telecomunicación y que, como tal, tiene la capacidad de conectarse a la red celular de comunicaciones. Por otro lado, en caso de que el confinado tenga en su posesión otro equipo o aditamento, *que no sea un celular*, se debe demostrar que dicho objeto tiene la capacidad de permitir la transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet para que se entienda cometido el delito.[35] Ello, porque la Ley Núm. 15 se aprobó por la

---

[34] Véase, además, la Exposición de Motivos de la Ley Núm. 15, 4 LPRA secs. 1631-1635, en la cual se indica que "[c]ualquier persona razonable debe concluir que el uso libre e irrestricto de medio de comunicación, incluyendo la telefonía celular, es uno de los privilegios de la libre comunidad que la persona que comete un delito o falta pierde como parte de la reclusión o institucionalización que se le impone por haber violentado el contrato social".

[35] Esa es la única lectura razonable y lógica del estatuto en cuestión. De otra manera, el confinado no comete el delito con sólo extraer del

Asamblea Legislativa para penalizar a los confinados por el uso irrestricto y sin autorización de los medios de comunicación, los cuales se utilizan con gran frecuencia, para cometer actividades ilícitas como fraude, intimidación de testigos, hostigamiento a víctimas de violencia doméstica, la planificación de asesinatos, entre otras. Exposición de Motivos de la Ley Núm. 15.

Expuesto el derecho aplicable, procederemos a analizar la controversia ante nuestra consideración.

III

Luego de examinar con detenimiento los elementos de ambos delitos –que como mencionamos son *idénticos*– entiendo que el principio de especialidad no aplica en este caso. Ello porque no hay una relación de género a especie entre ambos delitos. En otras palabras, ninguno de los dos contiene un elemento adicional que lo haga más especial que el otro en su aplicación, aspecto requerido para que aplique el principio de especialidad. L. E. Chiesa, Derecho Penal Sustantivo, 81 Rev. Jur. U.P.R. 343, 353 (2012); S. Mir Puig, Derecho Penal: Parte General, 8va ed., Barcelona, Reppertor, S.L., 2008, pág. 654; F. Muñoz Conde & M. García Arán, Derecho Penal: Parte General, 7ma ed. rev., Valencia, Tirant Lo Blanch, 2007, págs. 467-468. Por tanto, a diferencia de lo expresado por el Juez Asociado señor Kolthoff Caraballo en su Opinión de

_____

celular el "Sim Card", a pesar de tener un equipo de telecomunicación no autorizado.

conformidad,[36] no procede recurrir al propósito y a las características de ambos estatutos para establecer la relación de especialidad, ya que, una vez se determina que ninguno de los dos delitos conlleva un elemento adicional, no hay una relación de género a especie entre ambos y no aplica el principio.

Explicado esto último, sucede que al momento en que ocurrieron los hechos tanto el Art. 277 del Código Penal, supra, como el Art. 2 de la Ley Núm. 15, supra, tenían una pena de reclusión por un término fijo de 3 años.[37] Sin embargo, estando el caso ante nuestra consideración, se aprobó la Ley Núm. 246-2014 que enmendó el Art. 307 del Código Penal, 33 LPRA sec. 5415, de tal forma que la pena del delito incluido en el Art. 2 de la Ley Núm. 15, supra, cambió de una pena de reclusión por un término fijo de 3 años a:

> una pena de reclusión [sic] restricción terapéutica, restricción domiciliaria, servicios comunitarios, o combinación de estas penas, por un término fijo que no puede ser menor de seis (6) meses un (1) día ni mayor de tres (3) años, según la presencia de atenuantes o agravantes a la pena. En tal caso, la persona puede ser considerada para libertad bajo palabra por la

---

[36] Opinión de conformidad emitida por el Juez Asociado señor Kolthoff Caraballo, págs. 11-12.

[37] El Art. 277 del Código Penal, supra, expresamente dispone que conlleva una pena de reclusión por un término fijo de tres (3) años. Por otro lado, el Art. 2 de la Ley Núm. 15, supra, dispone que constituirá delito grave de cuarto grado, lo cual al momento en que ocurrieron los hechos también conllevaba una pena de reclusión por un término fijo de 3 años al amparo del Art. 307 del Código Penal, 33 LPRA sec. 5415, por ser un delito grave tipificado en una ley penal especial bajo el sistema de clasificación de delitos del Código Penal de 2004, Ley Núm. 149-2004, y no tener pena estatuida. Así, al momento de los hechos los elementos del delito eran idénticos y las penas también.

Junta de Libertad bajo Palabra al cumplir el cincuenta (50) por ciento del término de reclusión impuesto.

Es decir, a pesar de que al momento de la comisión de los hechos tanto los elementos como la pena de ambos delitos eran idénticos, mientras se procesaba al acusado uno de esos delitos se enmendó y su pena ahora le es más favorable. Al analizar la situación excepcional en la cual nos encontramos, así como el principio de favorabilidad según expuesto previamente, procede acusar por el delito estatuido en el Art. 2 de la Ley Núm. 15, supra. Lo anterior porque, a pesar de estar ante dos delitos que penalizan *exactamente la misma conducta*, esa conducta se desvaloró en una de las dos disposiciones. Ello conllevaría que el señor Cordero Meléndez, por el mismo acto, esté sujeto a la posible aplicación de dos penas distintas —una más favorable que la otra— lo cual dependerá del artículo por el cual el Ministerio Público lo acuse. La situación anterior demuestra precisamente la arbitrariedad e irrazonabilidad que se quiere evitar por medio del principio de favorabilidad.

A pesar de que estamos aplicando el principio de favorabilidad a una situación que no es típica, porque el delito cuya pena fue enmendada favorablemente durante el transcurso del procedimiento penal no fue el delito por el cual se le acusó, considero que este es el curso correcto. Según esbozamos, el principio de favorabilidad tiene como fin evitar que a un individuo se le trate más

rigurosamente que a otro por el mero hecho de que cometió el mismo acto con anterioridad al otro individuo. Ello sería contrario a la racionalidad que se espera en las acciones del Estado. Sería igualmente arbitrario que un error del legislador –de codificar la misma conducta en dos estatutos distintos y luego enmendar uno de esos estatutos para incluir una pena más favorable– tenga como consecuencia que a dos individuos que incurran en la misma conducta (en el caso de autos poseer, sin autorización, un teléfono celular en una institución penal) se les castigue con penas distintas, dependiendo del delito que le impute el Ministerio Público. El derecho no puede prestarse para resultados absurdos. En conclusión, y por lo anteriormente expuesto, procede que se acuse al señor Cordero Meléndez por el Art. 2 de la Ley Núm. 15, supra, en virtud de dicho principio.

Con relación a la desestimación solicitada por el señor Cordero Meléndez, y contrario a lo que éste señala, no hay una ausencia total de la prueba, ya que, según lo determinó el Tribunal de Primera Instancia, en la vista preliminar en alzada se demostró que éste tenía un teléfono celular en su celda sin autorización para poseerlo, conducta que también penaliza el Art. 2 de la Ley Núm. 15, supra.[38] El curso correcto es enmendar la cita

---

[38] Debido a que ambos delitos tienen los mismos elementos, al acusado se le notificó adecuadamente la conducta imputada. El hecho de que proceda modificar la acusación para que sea por el Art. 2 de la Ley

de la disposición que alegadamente se infringió. 34 LPRA Ap. II, R. 35(d). Por tanto, no erraron los tribunales inferiores al proveer no ha lugar a la desestimación solicitada.

IV

En virtud de lo expuesto, estoy conforme con la Sentencia que hoy emite este Tribunal por entender que procede acusar por el Art. 2 de la Ley Núm. 15, supra, en virtud del principio de favorabilidad.

Maite D. Oronoz Rodríguez
Jueza Asociada

---

Núm. 15, supra, y no por el Art. 277 del Código Penal, supra, en nada le afecta. Por el contrario, como ya hemos mencionado, le favorece.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                      CC-2014-337     Certiorari

Randiel Cordero Meléndez

    Peticionario

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 15 de septiembre de 2015.

La controversia de epígrafe requería que este Tribunal reconociera la naturaleza y adecuada aplicación del principio de especialidad, consagrado en nuestro ordenamiento penal. Particularmente, teníamos ocasión para determinar los efectos que su infracción acarrea.

Ante ello, una Mayoría de este Tribunal, aferrándose a una interpretación incorrecta del Art. 2 de la Ley Núm. 15-2011, se embarcó en una aplicación errónea del principio de especialidad que contrasta con la copiosa doctrina jurídica sobre esta materia. Esa aplicación desatinada del aludido principio conduce a una Mayoría de este

Tribunal a concluir inexplicablemente que procede enmendar el pliego para acusar por un delito por el cual el Ministerio Público admitió que no tiene prueba.

Por entender que en el caso de autos correspondía aplicar el mandato diáfano del principio de especialidad y, por consiguiente, desestimar la acusación del peticionario, no me queda más que disentir del curso de acción seguido por una Mayoría de este Tribunal.

Trabada así la controversia, procedo a desglosar el trasfondo fáctico y procesal que la suscitó.

I

Como consecuencia de unos alegados hechos acaecidos el 24 de abril de 2013, contra el Sr. Randiel Cordero Meléndez (señor Cordero Meléndez o peticionario) se presentó una denuncia por violación al Art. 277 del Código Penal de 2012, 33 LPRA sec. 5370.[39] En específico,

---

[39]En lo pertinente, del Código Penal de 2012 se desprende que se comete una infracción al Art. 277 cuando:

> [Una] persona confinada en una institución penal o juvenil que, sin estar autorizado, posea teléfonos celulares u otros medios de comunicación portátil, o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, será sancionado con pena de reclusión por un término fijo de tres (3) años. 33 LPRA sec. 5370. (Énfasis suplido).

Adviértase que en virtud de la Ley Núm. 124-2013, este artículo fue reenumerado para constituir el Art. 275. No obstante, para propósitos de esta Opinión Disidente continuaré haciendo alusión al Art. 277. Además, debo señalar que si bien el Art. 277 fue

surge de la denuncia que el Ministerio Público le atribuyó al señor Cordero Meléndez **la posesión de un equipo de telecomunicación (celular con chip y batería)** no autorizado por el Departamento de Corrección y Rehabilitación, **que permite el acceso a la red celular de comunicaciones.** *Véase* Apéndice de la Petición de *certiorari*, págs. 1-2.

Celebrado el procedimiento de vista preliminar, el foro judicial determinó no causa por el delito imputado. Inconforme, el Ministerio Público solicitó la celebración de una vista preliminar en alzada. Durante ésta, tanto la Sociedad para Asistencia Legal, representación legal del peticionario, como el Ministerio Público se expresaron en torno a la infracción del principio de especialidad. En cuanto al particular, el Ministerio Público argumentó lo siguiente:

> [S]e preguntará el tribunal porque [sic] razón el Ministerio Público **sabiendo que hay una ley especial e [sic] no ha radicado, verdad, y no radicó conforme al principio de especialidad por el Art. 2 de la Ley 15.** Pues eso tiene una razón de ser honorable, la prueba desfilada en este caso y la postulada por el Ministerio Público es que **no tenemos constancia, verdad, de que ese aditamento o artefacto, verdad, pueda hacer una transmisión de comunicación y que se [sic] estaba hábil para el día de los hechos.** A pesar de que eh... verdad de las gestiones que se hicieron y de que en efecto, por lo menos prendía el celular **no tenemos evidencia de que ese celular pueda ser capaz de transmitir un [sic] onda de comunicación que pueda utilizar precisamente para los fines de**

---

enmendado por la Ley Núm. 246-2014, el párrafo del artículo al que aquí se hace referencia permaneció inalterado.

> **comunicación**. *Véase* Apéndice de la Petición
> de c*ertiorari*, pág. 87. (Énfasis suplido).

Concluido el desfile de prueba, se encontró causa
para acusar por el Art. 277 de nuestro precepto penal
general. Así las cosas, el 26 de septiembre de 2013, se
presentó contra el señor Cordero Meléndez la siguiente
acusación:

> [...] ilegal, voluntaria, maliciosa,
> criminalmente, siendo confinado de una
> institución penal del Estado Libre Asociado
> de Puerto Rico, tenía en su posesión equipo
> de telecomunicación no autorizado por el
> Departamento de Corrección, **que permite el
> acceso a la red celular de comunicaciones,
> consistente en un teléfono celular color
> negro**, de la compañía ATT, con chip y
> batería. *Véase* Apéndice de la Petición de
> c*ertiorari*, pág. 11. (Énfasis suplido).

Luego de varios trámites procesales, el peticionario
presentó una *Moción de Desestimación* al amparo de la
Regla 64(p) de las Reglas de Procedimiento Criminal, 34
LPRA Ap. II, R. 64(p). En esencia, arguyó que el
Ministerio Público contravino el principio de
especialidad al presentar cargos por transgresión a una
ley general, en lugar de aplicar las disposiciones de la
ley especial provistas en el Art. 2 de la Ley Núm. 15-
2011 (Ley Núm. 15), 4 LPRA sec. 1632, que regulaban con
mayor especificidad la conducta atribuida.[40] Asimismo,

---

[40]El Art. 2 dispone, en lo pertinente, que:

> La posesión por una persona internada en una
> institución penal o juvenil, de equipos de
> telecomunicación no autorizados, incluyendo
> teléfonos celulares y cualquier tipo de equipo
> o aditamento **que permita transmisión de
> señales radiales o acceso a la red celular de
> comunicaciones o a una conexión inalámbrica a**

alegó que hubo ausencia total de prueba sobre los elementos esenciales del delito bajo la ley especial aplicable a los hechos.

Para el señor Cordero Meléndez, el Ministerio Público no puede pasar por alto el aludido principio "simplemente porque sea más fácil probar los elementos del delito contemplados en la ley general o por no contar con prueba para probar los elementos del delito bajo la ley especial". *Véase* Apéndice de la Petición de *certiorari*, pág. 22. En consecuencia, solicitó la desestimación de la acusación. Por su parte, el Ministerio Público se allanó a la determinación que en su día hiciera el foro judicial con respecto a la solicitud de desestimación presentada. Ello, toda vez que nunca expresó su postura, a pesar de haber sido ordenado por el tribunal.

El 26 de marzo de 2014, el Tribunal de Primera Instancia emitió una Resolución mediante la cual declaró no ha lugar la moción de desestimación instada por el señor Cordero Meléndez. En síntesis, concluyó que el peticionario no lo colocó en posición para determinar que en la vista preliminar en alzada no desfiló prueba con

_____

**Internet que no sea el acceso provisto por la institución**, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. Esta infracción será tomada en consideración en la evaluación de elegibilidad para libertad bajo palabra, probatoria, programa de desvío o de trabajo, bonificación o cualquier otro beneficio al que la persona pudiera ser elegible. 4 LPRA sec. 1632. (Énfasis suplido).

relación a los elementos del delito imputado. De igual forma, el foro primario razonó que el juzgador que presidió la mencionada vista en alzada estimó probada la consumación de los elementos del delito proscrito en el Art. 277 del Código Penal, por lo que su dictamen no debía alterarse.

En desacuerdo, el señor Cordero Meléndez recurrió ante el Tribunal de Apelaciones mediante petición de *certiorari* y moción en auxilio de jurisdicción. El 16 de abril de 2014, el foro apelativo intermedio emitió una Resolución en la cual denegó la expedición del recurso y, por consiguiente, declaró no ha lugar la moción de paralización presentada. En un escueto dictamen, determinó que el recurso instado era frívolo. A su vez, razonó que "[e]l tipo de delito imputado al amparo del Art. 277 del Código Penal, 33 L.P.R.A., sec. 5370 (la mera posesión de un celular en una institución correccional) es radicalmente distinto al de la Ley 15-2011 (el uso de celulares para cometer fraudes u otros delitos desde una institución correccional)". *Véase* Apéndice de la Petición de *certiorari*, pág. 93.

Inconforme con tal determinación, el señor Cordero Meléndez presentó ante este Tribunal un recurso de *certiorari*, en conjunto con una moción en auxilio de jurisdicción, y señaló la comisión del siguiente error:

> Erró el Honorable Tribunal de Apelaciones al denegar la expedición del recurso presentado, confirmando de esa forma la determinación del TPI, toda vez que en el caso ante su consideración procedía la

> desestimación de la acusación toda vez que era de aplicación el Art. 2 de la Ley 15 de 18 de febrero de 2011 y no el Art. 277 del Código Penal, violentado de esa forma, el principio de especialidad.

Esencialmente, el peticionario reproduce los argumentos esgrimidos ante los foros recurridos con relación a la alegada violación al principio de especialidad. Por tanto, nos solicita que revoquemos la determinación del Tribunal de Apelaciones y, a su vez, ordenemos la desestimación de la acusación a base de la aplicación del principio de especialidad.

En atención a lo anterior, el 2 de mayo de 2014, emitimos una Resolución mediante la cual le concedimos 20 días a la parte recurrida para que mostrara causa por la cual no debíamos revocar el dictamen del foro apelativo intermedio. En su *Escrito en Cumplimiento de Orden*, el Ministerio Público, representado por la Oficina del Procurador General, alega que el caso ante nuestra consideración no cumple con los requisitos que activan el principio de especialidad. A esos efectos, arguye que entre el Art. 277 del Código Penal y el Art. 2 de la Ley Núm. 15 existe una duplicidad de disposiciones legales; una idéntica tipificación de la conducta antijurídica, en la que se está penalizando la misma conducta de posesión de celulares o medios de comunicación por un confinado en una institución penal, con los mismos elementos del tipo, sin que una disposición sea más especial o exija más que la otra. Para la Oficina del Procurador General, quien transgrede el delito especial (Art. 2 de la Ley Núm. 15)

también infringe el delito general (Art. 277 del Código Penal) y a la inversa: quien quebranta el delito general, también contraviene el delito especial.

De igual forma, la Oficina del Procurador General expone que el principio de especialidad está fundado en la premisa de que el delito especial tiene una pena mayor que el delito general. Por tanto, aduce que en este caso no cabe aplicar tal principio, ya que la pena por el delito especial es más benigna que la pena para el delito general. En vista de ello, la Oficina del Procurador General argumenta que procede la acusación por el delito general imputado, pues es el que establece la pena más grave. Entiende que ello es cónsono con el principio de alternatividad.

Cumplida nuestra orden y con el beneficio de la comparecencia de las partes involucradas, procedo a exponer el criterio que me lleva a disentir del dictamen emitido por una Mayoría de este Tribunal.

**II**

Como es sabido, en nuestro ordenamiento jurídico rige la norma de que si una misma materia está prevista como delito tanto por una ley general como por una ley especial, se aplicará la ley especial. Pueblo v. Hernández Villanueva, 179 DPR 872, 891-892 (2010); Pueblo v. Ramos Rivas, 171 DPR 826, 836-837 (2007); Pueblo v. Pérez Casillas, 117 DPR 380, 398-399 (1986); Pueblo v. Mena Peraza, 113 DPR 275, 280 (1982). Recientemente, el legislador reafirmó esta normativa al enmendar mediante

la Ley Núm. 246-2014 el Art. 9 del Código Penal de 2012, 33 LPRA sec. 5009, y dejar establecido que "[c]uando la misma materia se regula por diversas disposiciones penales: la disposición especial prevalece sobre la general". Este mandato diáfano se enmarca dentro de lo que se conoce como el principio de especialidad.

En virtud de tal principio, se pueden resolver los conflictos del concurso de leyes, ya que constituye uno de los criterios para solucionar la existencia del concurso aparente entre varias leyes o disposiciones legales.[41] Pueblo v. Hernández Villanueva, *supra*, págs. 891-892 citando a L. Jiménez de Asúa, Tratado de Derecho Penal, T. II, 2da ed., Buenos Aires, Ed. Losada, 1958, pág. 540; E.L. Chiesa Aponte, *Derecho Penal Sustantivo*, 81 Rev. Jur. UPR 343, 347 (2012). Conforme al referido principio, ante la disyuntiva de aplicar una ley general y una ley especial, que aluden a la misma temática, se torna forzosa la aplicación de la última. Esto, a menos que exista una determinación legislativa que establezca lo contrario.

---

[41]El concurso aparente de leyes surge cuando más de un precepto penal concurre en su aplicación a un hecho delictivo, lo cual da lugar a un conflicto en términos de cuál de las disposiciones penales habrá de aplicar. Se dice que es un conflicto aparente debido a que se resolverá aplicando reglas de interpretación que tomen en consideración la relación de jerarquía en que se encuentran las diversas normas que concurran. Esta clasificación de relaciones de jerarquía entre las normas se resume en: especialidad, consunción y subsidiariedad. D. Nevares-Muñiz, Derecho Penal puertorriqueño: Parte general, 6ta ed., Instituto para el Desarrollo del Derecho, Inc., 2010, págs. 127-128.

En repetidas ocasiones este Tribunal ha sostenido que el principio de especialidad es:

> [E]n rigor, una regla de interpretación estatutaria que toma en cuenta la relación de jerarquía en que se hallan las distintas normas que concurren en su aplicación a un hecho delictivo. En estos casos se aplica la ley especial, según la máxima *lex specilais derogat legi genereali*, pues se parte del supuesto de que la finalidad de una regulación especial es excluir o desplazar la general. Y es que así tiene que ser, pues quien realiza el tipo específico siempre consuma el genérico, mientras que a la inversa no sucede lo contrario. <u>Pueblo v. Hernández Villanueva</u>, *supra*, pág. 892; <u>Pueblo v. Ramos Rivas</u>, *supra*, págs. 836-837. (Citas omitidas).

El reconocido tratadista Santiago Mir Puig señala que de acuerdo al "principio de especialidad, existe concurso de leyes cuando de los varios preceptos aparentemente concurrentes uno de ellos contempla más específicamente el hecho que los demás, y tal concurso de leyes debe resolverse aplicando sólo la ley más especial (lex specialis derogat legem generalem: la ley especial deroga la general)".[42] S. Mir Puig, <u>Derecho Penal: Parte General</u>, 8va ed., Barcelona, Ed. Reppertor, 2008, pág. 654. En cuanto al requisito de que uno de los preceptos contemple el hecho de forma más específica que el otro, Mir Puig explica que:

> Un precepto es más especial que otro cuando requiere, además de los presupuestos igualmente exigidos por este segundo, algún otro presupuesto adicional: **si un precepto requiere los presupuestos a + b y otro los**

_____

[42]Tal y como reseñé, en nuestro ordenamiento jurídico ello es así ante el mandato expreso del legislador contenido en el Art. 9 de nuestro Código Penal, 33 LPRA sec. 5009.

**presupuestos a + b + c, el segundo es más especial que el primero.** Todo aquel hecho que realiza el precepto especial realiza necesariamente el tenor literal del general, pero no todo hecho que infringe el precepto general realiza el tenor literal del especial. Íd. (Énfasis suplido).

En armonía con lo anterior, también es menester destacar que el tratadista Jiménez de Asúa sostiene que:

[D]os leyes o dos disposiciones legales se hallan en relación de general y especial, **cuando los requisitos del tipo general están todos contenidos en el especial, en el que figuran además otras condiciones calificativas a virtud de las cuales la ley especial tiene preferencia sobre la general en su aplicación.** L. Jiménez de Asúa, <u>Tratado de Derecho Penal</u>, T. II, 2da ed., Buenos Aires, Ed. Losada, 1950, pág. 546. (Énfasis suplido).[43]

**A.**

Cabe señalar que el vínculo de especialidad puede surgir de varias formas. Esto es, puede ocurrir entre una disposición especial y una de carácter general dentro de una misma ley. También, puede darse entre una ley

---

[43]Los fundamentos discutidos en este acápite llevan a la inexorable conclusión de que, a diferencia de lo que se intima del dictamen emitido por una Mayoría de este Tribunal, para que sea de aplicación el principio de especialidad no es suficiente con meramente encontrar una disposición general y una especial. De la doctrina jurídica sobre el tema se desprende que tiene que haber algo más. Ante ello, es forzoso determinar que no es posible aludir al principio de especialidad cuando se trata de preceptos idénticos. Una cosa es que ambos delitos regulen la misma materia, tal como lo requiere el principio de especialidad, y otra es que los delitos sean idénticos. Conforme a los fundamentos expuestos, en este último supuesto existe, de entrada, un defecto de especialidad. Evidentemente, en el caso de autos existe una relación de especialidad entre los preceptos aplicables, pero, a diferencia de lo que dictamina una Mayoría de este Tribunal, no nos encontramos ante delitos idénticos. Como veremos, la ley especial contempla y describe más específicamente el hecho que la ley general.

especial y una ley general, como lo es el Código Penal. A su vez, esa relación de especialidad también puede acontecer entre dos leyes especiales. D. Nevares-Muñiz, <u>Código Penal de Puerto Rico: Comentado por Dora Nevares-Muñiz</u>, Instituto para el Desarrollo del Derecho, Inc., 2013, págs. 20-21.

De igual forma, debe aclararse que en virtud del principio de especialidad prevalece la ley especial sobre una materia jurídica que está regulada en términos generales en otra ley, independientemente del orden temporal en que éstas fueron aprobadas. E.L. Chiesa Aponte & A. Febres Jorge, *Procedimiento Criminal*, 77 Rev. Jur. UPR 657, 670 (2008). En cuanto a este asunto, y luego de examinar la naturaleza del principio de especialidad, en <u>Pueblo v. López Pérez</u>, 106 DPR 584, 586 (1977) citando a L. Jiménez de Asúa, <u>Tratado de Derecho Penal</u>, T. II, 2da ed., Buenos Aires, Ed. Losada, 1950, pág. 546, este Tribunal expresó que:

> Las dos disposiciones pueden ser integrantes de la misma ley o de leyes distintas: pueden haber sido promulgadas al mismo tiempo o en época diversa, y en este último caso, puede ser posterior tanto la ley general como la especial. Pero es preciso que ambas estén vigentes contemporáneamente en el instante de su aplicación, porque, en el supuesto contrario, no sería un caso de concurso, sino que presentaría un problema en orden a la ley penal en el tiempo.

Por su parte, en <u>Pueblo v. Pérez Casillas</u>, *supra*, págs. 398-399, este Tribunal se pronunció en torno al modo de aplicación del principio de especialidad. A esos efectos, se determinó que éste requiere que dos o más

disposiciones penales regulen, en aparente conflicto, la misma materia. En Pueblo v. Hernández Villanueva, *supra*, pág. 894, este Tribunal reafirmó la mencionada normativa al concluir que, como cuestión de umbral, para que pueda aplicar el principio de especialidad es ineludible la existencia de un conflicto que haga incompatible el uso de dos o más disposiciones penales al mismo tiempo. En ese sentido, este Tribunal expresó que es de aplicación el principio de especialidad cuando el conflicto es el resultado de un choque entre una ley o disposición general y una ley o disposición especial. Íd.

Ahora bien, considero que el principio de especialidad no torna en imperativo que las disposiciones legales de que se trate sean incompatibles o estén reñidas una con la otra. En cuanto a ello, el profesor Chiesa Aponte expresa que no avala la idea de que el principio de especialidad solo aplica cuando existe un conflicto entre dos disposiciones. La razón de ello es que el profesor entiende que "[e]n casos de especialidad, la disposición especial prima sobre la general, no porque hay un conflicto entre ambas disposiciones, **sino porque el precepto especial describe de forma más completa el curso de acción antijurídico llevado a cabo por el sujeto**". L.E. Chiesa Aponte, Derecho Penal Sustantivo, 2da ed., Publicaciones JTS, 2013, pág. 90. (Énfasis suplido); E.L. Chiesa Aponte, *Derecho Penal Sustantivo*, 81 Rev. Jur. UPR 343, 349 (2012). Esto significa que el principio puede emplearse

aunque las disposiciones que aparentemente son de aplicación no se encuentren en conflicto; ello, pues, la incompatibilidad o el conflicto no resultan necesarios. E.L. Chiesa Aponte, *Derecho Penal Sustantivo*, 81 Rev. Jur. UPR 343, 347 (2012).

Ante esa realidad, opino que el mandato del Art. 9 es diáfano: ante una ley general y una especial que regulan la misma materia, predomina la legislación especial, independientemente de si las disposiciones penales están reñidas entre sí. En consecuencia, revocaría, en ese extremo, los pronunciamientos jurisprudenciales con relación al particular emitidos en Pueblo v. Hernández Villanueva, *supra*.

**B.**

Por otro lado, conviene puntualizar que una vez hallada la especialidad, ésta se aplica terminantemente. L. Jiménez de Asúa, Tratado de Derecho Penal, T. II, 2da ed., Buenos Aires, Ed. Losada, 1950, pág. 547. Ello significa que el principio de especialidad tiene efectos en la naturaleza de la decisión del juez, ya que su fin es obligarlo a aplicar una disposición en circunstancias en las que no existiría tal obligación. Esto, pues, el principio de especialidad convierte en imperativo un curso de acción que, de ordinario, sería meramente discrecional. E.L. Chiesa Aponte, *Derecho Penal Sustantivo*, 81 Rev. Jur. UPR 343, 350 (2012). En vista de ello, el juez ya no goza de una amplia discreción para decidir cuál de los dos preceptos debe aplicar.

L.E. Chiesa Aponte, Derecho Penal Sustantivo, 2da ed., Publicaciones JTS, 2013, págs. 90-91; E.L. Chiesa Aponte, Derecho Penal Sustantivo, 81 Rev. Jur. UPR 343, 350 (2012).

Del mismo modo, considero que el Ministerio Público también debe venir llamado a cumplir con la orden expresa plasmada en el Art. 9 de nuestro Código Penal. Ciertamente, tal conclusión no despoja a la figura del fiscal de su derecho a ejercer su discreción para acusar o no, o de acudir en alzada. Más bien, permitiría que el principio de especialidad no quede relegado a letra muerta, ni sea una disposición penal cuyo carácter sea meramente teórico.

En fin, sabido es que el principio de especialidad constituye una norma para interpretar la intención legislativa. Pueblo v. Ramos Rivas, supra, pág. 838; Pueblo v. Pérez Casillas, supra, pág. 399. Empero, la aplicación de este principio no es automática, pues deben examinarse los elementos de cada disposición y la manera en que éstos describen o tipifican más adecuadamente la conducta punible.

## III

En lo que atañe a la controversia ante nos, es pertinente examinar el propósito y alcance de la Regla 64(p) de las de Procedimiento Criminal. Veamos.

Sabido es que toda determinación de causa probable goza de una presunción de corrección. Sin embargo, es norma reiterada que el remedio exclusivo que tiene el

acusado ante una determinación de causa probable en la vista preliminar, ya sea la inicial o en alzada, es la desestimación al amparo de la Regla 64(p) de las de Procedimiento Criminal. Pueblo v. Rivera Cuevas, 181 DPR 699, 707 (2011). En síntesis, este es el instrumento adecuado para que el imputado de delito pueda cuestionar el pliego acusatorio o cualquier cargo incluido en éste.

Como fundamento para la desestimación de una denuncia o acusación criminal, o cualquier cargo incluido en éstas, la Regla 64(p) dispone lo siguiente:

> Que se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho. 34 LPRA Ap. II, R. 64(p).

Conforme a la mencionada regla, se pueden invocar dos fundamentos para la desestimación de la denuncia (en casos de delito menos grave) o de la acusación (en casos de delito grave), a saber: (1) que hubo ausencia total de prueba en la determinación de causa probable para acusar; o (2) que se violó alguno de los requisitos o derechos procesales que se deben observar en la vista. Pueblo v. Rivera Cuevas, *supra*, págs. 707-708; Pueblo v. Rivera Vázquez, 177 DPR 868, 878 (2010); Pueblo v. Branch, 154 DPR 575, 584-585 (2001).

Este Tribunal ha expresado que si se invoca el primer fundamento, el foro judicial debe examinar la prueba desfilada en la vista preliminar, y determinar si esa prueba establece la probabilidad de que esté presente

cada uno de los elementos del delito y la conexión del imputado con éste. Pueblo v. Rivera Cuevas, *supra*, pág. 708; Pueblo v. Rivera Vázquez, *supra*, 879. En estas circunstancias, aunque la prueba pueda establecer la comisión de otro delito, solo procede desestimar la acusación cuando haya ausencia total de prueba sobre uno o varios elementos del delito imputado, o sobre el vínculo de la persona con éste. Pueblo v. Rivera Cuevas, *supra*, pág. 708; Pueblo v. Rivera Vázquez, *supra*, pág. 879.

Por su parte, de invocarse el segundo fundamento, el foro judicial tiene el deber de determinar si la vista preliminar se realizó a tenor con lo establecido en la citada Regla 23 de las de Procedimiento Criminal y si se ofrecieron todas las garantías procesales correspondientes. Pueblo v. Rivera Vázquez, *supra*, pág. 879. No tienen que considerarse los hechos del caso ni la suficiencia de éstos para configurar el delito imputado.

Ambos fundamentos para la desestimación requieren que se demuestre claramente el error que se imputa porque, como expuse, toda determinación de causa probable para acusar goza de una presunción de corrección.

**IV**

Por tratarse de lo que concierne al caso de epígrafe, resulta imperativo evaluar las disposiciones pertinentes de la Ley Núm. 15-2011, 4 LPRA sec. 1631 *et*

*seq.*[44] En ese ejercicio, debemos considerar que nos encontramos ante un estatuto de naturaleza penal, por lo que es deseable que sea la propia Asamblea Legislativa la que precise lo que constituye la conducta delictiva. Pueblo v. Figueroa Pomales, 172 DPR 403, 416 (2007). Es por ello que los tribunales, a fin de resolver las controversias ante su consideración y adjudicar los derechos de las partes, deben interpretar los estatutos aplicables a la situación de hechos que tienen ante sí, de forma tal que se cumpla con la intención legislativa. Pueblo v. Zayas Rodríguez, 147 DPR 530, 537 (1999); *véase*, además, R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., Publicaciones JTS, 1987, Vol. 1, pág. 241. Esto, toda vez que el legislador, en su función de promulgar leyes,

> [t]rata de corregir un mal, alterar una situación existente, completar una reglamentación vigente, fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno. Íd., págs. 245-246.

En repetidas ocasiones hemos expresado que las leyes hay que interpretarlas y aplicarlas en armonía con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver. Pueblo v. Zayas Rodríguez, *supra*, pág. 537; Col. Ing.

---

[44]Conocida como *Ley que prohíbe el uso de teléfonos celulares por confinados en instituciones penales o juveniles y el exterior.*

Agrim. PR v. AAA, 131 DPR 735, 756 (1992); Pueblo v. Pizarro Solís, 129 DPR 911, 918 (1992). Asimismo, en el quehacer de interpretar las leyes, debemos considerar la realidad social de donde surgen y operan. Pueblo v. Figueroa Pomales, *supra*, pág. 417; Pueblo v. Sierra Rodríguez, 137 DPR 903 (1995); Pueblo v. Arandes de Celis, 120 DPR 530 (1988); Pacheco v. Vargas, Alcaide, 120 DPR 404 (1988). A tales efectos, nuestra función se limita a considerar el contexto de sus términos y la interpretación de la intención legislativa. Pueblo v. Figueroa Pomales, *supra*, pág. 419.

En fin, constituye un "principio cardinal de hermenéutica que al lenguaje de una ley debe dársele la interpretación que valida el propósito que tuvo el legislador al aprobarla". Pueblo v. Figueroa Pomales, *supra*, pág. 418; Pacheco v. Vargas, Alcaide, *supra*, pág. 409. Es decir, la hermenéutica jurídica consiste en auscultar, averiguar, precisar, determinar, cuál ha sido la voluntad legislativa. Pepsi-Cola v. Mun. Cidra, 186 DPR 713, 736-737 (2012); IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 738 (2012); Pueblo v. Zayas Rodríguez, *supra*, pág. 537; *véase*, además, Bernier y Cuevas Segarra, *op. cit.*, pág. 241. En ese sentido, este Tribunal debe interpretar la ley en consideración de los fines que persigue y la política pública que la inspira.

Es al amparo de estos principios doctrinales que corresponde examinar la intención del legislador para

determinar lo que constituye la conducta tipificada como delito en el Art. 2 de la Ley Núm. 15. Para ello, se debe auscultar, a la luz de su historial legislativo, cuál fue el fin del legislador. Veamos.

Sabido es que en Puerto Rico ha proliferado la práctica de introducir equipos de telecomunicación en las instituciones penales y juveniles y se ha detectado su uso frecuente para realizar o coordinar actividades ilícitas desde la institución. 4 LPRA sec. 1631. Por esta razón, se establece como política pública que es un asunto de alto interés evitar las **comunicaciones no autorizadas** entre las personas ingresadas en instituciones penales o juveniles y el exterior, a los fines de impedir la continuidad de la actividad delictiva. (2011 (Parte 1) Leyes de Puerto Rico 1144). También, se enmarca como política pública que el **uso irrestricto de sistemas de comunicaciones**, incluyendo el teléfono celular, es uno de los privilegios que pierde la persona que ha incurrido en conducta delictiva. Íd.

A esos efectos, la Ley Núm. 15 tiene el objetivo expreso de restringir **el uso no autorizado** de equipos de telecomunicaciones para impedir la continuidad de la actividad criminal dentro de las instituciones penales. 4 LPRA sec. 1631(d). Esta actividad delictiva se refiere a: (1) fraudes vía telefónica; (2) intimidación de testigos; (3) hostigamiento a víctimas de violencia doméstica; (4) continuidad de la administración del "punto" de venta de drogas; y (5) pautar y ordenar asesinatos, entre otras.

*Véase* Exposición de Motivos de la Ley Núm. 15-2011 (2011 (Parte 1) Leyes de Puerto Rico 1145). Para el legislador, tal actividad crea un riesgo para la seguridad y el bienestar público, interfiere con el mandato constitucional de rehabilitación y constituye una manera de burlar las reglas de disciplina y conducta de las instituciones. Íd.; 4 LPRA sec. 1631(c).

De lo que antecede se desprenden varias conclusiones. Se puede apreciar que era evidente la preocupación del legislador por evitar el uso de todo equipo que permita la transmisión de señales radiales o acceso a la red celular de comunicaciones o a internet en las instituciones penales. Para ello, se promovió una vigorosa política pública en aras de impedir la continuidad de la actividad criminal dentro de las instituciones penales y hacia el exterior. Inclusive, queda claro que para el legislador existe un interés apremiante de que se legisle para controlar dicha actividad, ya que el uso de sistemas de comunicación amenaza la vida y el bienestar de los ciudadanos y, a su vez, perjudica el proceso de rehabilitación de las personas internas en la institución. *Véase* Exposición de Motivos de la Ley Núm. 15-2011 (2011 (Parte 1) Leyes de Puerto Rico 1147). En vista de ello, no podemos ignorar lo dispuesto en la Ley Núm. 15 y en la intención legislativa.

En armonía con lo anterior, el Art. 2 de la Ley Núm. 15 dispone, en lo relativo a la controversia ante nos,

que la posesión por un confinado de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier aditamento **que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a internet que no sea el acceso provisto por la institución**, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. 4 LPRA sec. 1632. No cabe duda de que este delito busca resguardar la referida intención legislativa y política pública enmarcada en la Ley Núm. 15; esto es, restringir las comunicaciones no autorizadas desde las instituciones penales para evitar la continuidad de la actividad criminal. Adviértase que el delito en cuestión prohíbe expresamente los equipos de telecomunicación no autorizados, "incluyendo teléfonos celulares **y** cualquier tipo de equipo o aditamento **que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución**". 4 LPRA sec. 1632. (Énfasis suplido).

Una simple lectura del artículo lleva a concluir que el legislador tipificó como delito el uso de todo equipo que transmita señales o tenga acceso a la red de comunicaciones o a internet. En otras palabras, se requiere que el equipo tenga la posibilidad de transmitir señales o acceder a la red de comunicaciones o a internet. Obviamente, el legislador reconoce que el

equipo más común es el celular, por lo que lo incluye expresamente a modo descriptivo. Nótese que la frase "que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución", es un elemento del delito que aplica a todo equipo de telecomunicación, incluyendo, obviamente, al teléfono celular. Es por ello que resulta obligatorio determinar que para cometer este delito se requiere que un confinado posea cualquier equipo de telecomunicación que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a internet. Indudablemente, esta interpretación no se aparta de las normas de hermenéutica que nos rigen como jueces, al mismo tiempo que se observa la política pública de evitar las comunicaciones no autorizadas proscritas por el legislador al aprobar la Ley Núm. 15, pero sin ignorar los principios y garantías de derecho penal que cobijan al acusado en este caso en particular.

Por su parte, para asegurar que se utilicen únicamente los sistemas telefónicos, de comunicaciones o informáticos que provee la institución, la Ley Núm. 15 establece que a toda persona que ingrese a una institución penal o juvenil "se le dará a su ingreso previa notificación verbal y escrita de esta restricción, incluyendo notificación de que está **prohibida la posesión y el uso** de cualquier sistema de comunicación no

autorizado por la Administración". 4 LPRA sec. 1634(a). (Énfasis suplido). A tono con ello, la *Certificación de Orientación sobre Ley Núm. 15 de 18 de febrero de 2011*, advierte que el confinado que sea sorprendido y se le ocupe cualquier tipo de equipo, como teléfono celular o aditamento **que permita la transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica de internet**, que no sea el provisto por la institución, incurrirá en la comisión de delito grave de cuarto grado. *Véase* Petición de *certiorari*, pág. 10.

## V

A la luz de la normativa planteada, procedo a exponer mi parecer en torno a la controversia de epígrafe.

Surge de los autos que al señor Cordero Meléndez se le imputó **poseer un equipo de telecomunicación no autorizado (celular con chip y batería) que permite acceso a la red celular de comunicaciones**. En vista de que se determinó causa para acusar por el Art. 277 del Código Penal de 2012, el peticionario presentó una moción de desestimación al amparo de la Regla 64(p). En síntesis, alegó que se quebrantó el principio de especialidad, toda vez que tanto en la denuncia como en la acusación se incluyeron todos los elementos del delito de una disposición penal que regulaba con mayor especificidad la materia atribuida, pero se le imputó el delito contenido en el precepto penal general. En otras

palabras, para el señor Cordero Meléndez el Ministerio Público contravino el principio de especialidad al descartar imputarle la disposición penal especial dispuesta en el Art. 2 de la Ley Núm. 15, la cual regulaba más específicamente la conducta atribuida, y, en cambio, acusarlo por la ley general. En consecuencia, solicitó la desestimación de la acusación. Ante ello, los foros recurridos denegaron la petición en cuestión.

Ponderados los documentos que obran en el expediente, en conjunto con la doctrina jurídica aplicable, considero que el planteamiento del señor Cordero Meléndez tiene méritos. Las circunstancias del presente caso no dejan duda de que se actuó en contravención al principio de especialidad. Por ello, sostengo que los foros recurridos incidieron en el curso de acción seguido. Me explico.

A poco examinar lo expuesto, uno se percata de que si bien ambas disposiciones legales aluden a la misma materia, de su texto expreso surgen distinciones en términos de especificidad. Evidentemente, no nos encontramos ante delitos con elementos idénticos. El Art. 2 de la Ley Núm. 15 prohíbe **la posesión y el uso** de equipos de telecomunicación no autorizados que permiten la transmisión de señales radiales, acceso a la red de comunicaciones o conexión a internet. Como vimos, la parte expositiva de la ley disipa cualquier otra interpretación al respecto. Ésta es clara al recalcar que "[e]l uso de sistemas de comunicación desde las

instituciones penales y civiles amenaza la vida y bienestar del pueblo y perjudica el proceso de rehabilitación que es mandato constitucional. Por tanto, existe un interés público apremiante de que se legisle para controlar dicha actividad". *Véase* Exposición de Motivos de la Ley Núm. 15-2011 (2011 (Parte 1) Leyes de Puerto Rico 1147).

Ciertamente, el Art. 2 de la Ley Núm. 15 describe con mayor detalle aquella conducta que también se tipifica como delito en el Art. 277 del Código Penal. No obstante, una lectura tanto de la denuncia como de la acusación permite concluir, sin ambages, que el delito imputado al señor Cordero Meléndez está descrito con mayor especificidad en el Art. 2 de la Ley Núm. 15. Sin duda, el imputarle al señor Cordero Meléndez la posesión de un equipo de telecomunicación (celular con chip y batería) **que permite el acceso a la red celular de comunicaciones**, hace que el Art. 2 de la Ley Núm. 15 contemple ese elemento adicional que describe o tipifica con mayor especificidad la conducta punible. Esto es, el Art. 2 contiene esa condición calificativa en virtud de la cual la ley especial prevalece sobre la general en su aplicación.[45] Ello, pues, el Art. 277 de nuestro precepto penal general solo tipifica como delito la mera posesión

---

[45]Valga puntualizar, además, que es por conducto expreso de la Ley Núm. 15 que el Departamento de Corrección y Rehabilitación viene obligado a notificar, a toda persona que ingrese a una institución, la prohibición de **poseer y utilizar** cualquier sistema de comunicación no autorizado por esta agencia.

de teléfonos celulares u otros medios de comunicación portátil.

Por tanto, no alcanza a persuadirme el argumento del Estado de que entre la disposición general y la especial existe una duplicidad de disposiciones legales o una idéntica tipificación de la conducta antijurídica. Tampoco tiene razón el Estado cuando argumenta que en este caso no es de aplicación el principio de especialidad, ya que la pena de la ley especial es más benigna que aquella establecida en la ley general.[46] Este

---

[46]Con relación a este argumento, en el 2014 la Asamblea Legislativa de Puerto Rico promulgó la Ley Núm. 246-2014, con el propósito de enmendar el Código Penal hasta entonces vigente. En lo que aquí concierne, se modificó el texto del Art. 307 del Código Penal de 2012 para disponer que los delitos graves que se tipifican en leyes penales especiales como *Delito grave de cuarto grado*:

> [C]onllevará[n] una pena de reclusión restricción terapéutica, restricción domiciliaria, servicios comunitarios, o combinación de estas penas, por un término fijo que no puede ser menor de seis (6) meses un (1) día ni mayor de tres (3) años, según la presencia de atenuantes o agravantes a la pena. En tal caso, la persona puede ser considerada para libertad bajo palabra por la Junta de Libertad bajo Palabra al cumplir el cincuenta (50) por ciento del término de reclusión impuesto. 33 LPRA sec. 5415.

Nótese que las recientes enmiendas tuvieron el efecto de modificar la pena impuesta para el Art. 2 de la Ley Núm. 15, así como sus condiciones colaterales. Por tanto, las enmiendas efectuadas llevan a la conclusión de que la pena estatuida en el Art. 2 puede resultar más benigna en comparación con la establecida para el Art. 277 del Código Penal. Esto, ya que a diferencia de la pena fija de reclusión de 3 años que apareja el Art. 277, se permite que aquel que infrinja el Art. 2 pueda cumplir la sentencia impuesta mediante pena de reclusión,

planteamiento no encuentra sostén en la literatura jurídica sobre el tema, ni en nuestros pronunciamientos jurisprudenciales con relación al particular.[47]

Resalto que la Ley Núm. 15 no ha sido derogada por el legislador y ésta contaba con total vigencia al momento de los hechos imputados. Así las cosas, no es rol de los foros judiciales derogar implícitamente un esquema legal vigente que regula con suficiente especificidad la conducta imputada al peticionario en aras de aplicar una disposición general. Sin duda, los foros recurridos incidieron al arrojar a las sombras el principio de especialidad, pretendiendo derogarlo sin facultad para ello. Por ello, no puedo avalar un curso de acción que, a todas luces, reduciría a letra muerta el aludido principio. Más aún, cuando sabemos que tanto los foros judiciales como el Ministerio Público vienen llamados a observar el mandato expreso enmarcado en este cardinal principio de derecho.

Ahora bien, entiendo que lo anterior no dispone de la totalidad de la controversia que nos ocupa. Esto es,

_____

restricción terapéutica, restricción domiciliaria, servicio comunitario o combinación de éstas.

[47]El principio de alternatividad al cual alude la Oficina del Procurador General en su *Escrito en Cumplimiento de Orden* solo se aplicará en defecto de relación de especialidad, subsidiariedad o consunción. Ahora bien, la única posibilidad de que no sean aplicables los criterios anteriores es que por un defecto legislativo dos o más preceptos vengan a prever exactamente el mismo hecho. *Véase* S. Mir Puig, <u>Derecho Penal: Parte General</u>, 8va ed., Barcelona, Ed. Reppertor, 2008, págs. 657-658.

resta por atender la solicitud de desestimación al amparo de la Regla 64(p) de las de Procedimiento Criminal, fundada en que se quebrantó el principio de especialidad. Con relación a ello, opino que procede aplicar la normativa jurídica vigente para disponer de tal petición. En otras palabras, de estimar que hubo ausencia total de prueba sobre uno o varios de los elementos del delito aplicable o que se infringió alguno de los requisitos o derechos procesales que se deben observar, la acción penal debe desestimarse.

En el presente caso, el Ministerio Público admitió en la vista en alzada que no presentó los cargos conforme al principio de especialidad, pues no contaba con prueba para imputar el delito especial. Así las cosas, el foro primario encontró causa para acusar por el precepto penal general. Ello, en violación al mandato dispuesto en el Art. 9 del Código Penal. Considero que la justificación de que es más fácil probar los elementos del delito general con relación al delito especial, no es fundamento válido para quebrantar el principio de especialidad.

Ante el particular escenario de la controversia de epígrafe, opino que procedía la desestimación de la acusación contra el señor Cordero Meléndez. Recordemos que el Ministerio Público admitió en vista preliminar en alzada que no contaba con la prueba necesaria para acusar al peticionario por el precepto penal especial que describía o tipificaba más específicamente la

conducta imputada. Conforme lo dispone la Regla 64(p) y su jurisprudencia interpretativa, ello constituye fundamento para la desestimación de la acusación debido a la ausencia de prueba sobre uno o varios de los elementos del delito aplicable.

## VI

Al amparo de los fundamentos enunciados, disiento del dictamen emitido por una Mayoría de este Tribunal. En su lugar, revocaría la determinación del Tribunal de Apelaciones y ordenaría la desestimación de la acusación contra el señor Cordero Meléndez.

Luis F. Estrella Martínez
Juez Asociado